| | |
|---|---|
| DONALD LEMON and CANDICE LEMON,<br><br>   Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>   Defendant. | No. C20-3018-LTS<br><br><br>**MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on cross motions (Docs. 27, 28) for summary judgment as to Count II of plaintiffs' state court petition (Doc. 2), which asserts a claim for bad faith failure to pay benefits.[1] Resistances and replies (Docs. 31, 32, 37, 38) have been filed with regard to both motions. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

Plaintiffs Donald Lemon and Candice Lemon (the Lemons) commenced this action on April 10, 2020, by filing a three-count petition (Doc. 2) in the Iowa District Court for Franklin County. Count I asserts that defendant State Farm Fire & Casualty Company (State Farm) breached an insurance contract. Count II asserts that State Farm acted in bad faith by failing to pay benefits under that insurance contract. Count III asserts that the Lemons are entitled to an award of punitive damages.

---

[1] Defendant's motion (Doc. 27) also addresses plaintiffs' claim for punitive damages.

On May 20, 2020, State Farm removed the action to this court by filing a notice (Doc. 1) of removal, invoking the court's diversity of citizenship jurisdiction. Trial is scheduled to begin August 1, 2022.

### III. RELEVANT FACTS

This case arises out of an insurance dispute between the Lemons and State Farm regarding a claim the Lemons submitted after a fire destroyed their residence. On May 2, 2019, at around 5:00 p.m., Ben McKinney reported a fire at the Lemons' home at 1175 Warbler Avenue in Dumont, Iowa. Doc. 27-4 at 139; Doc. 28-2 at 3-4. McKinney, who is a volunteer firefighter, watched the fire progress from the southeast to the northwest portion of the house while he waited for the fire department to arrive. Doc. 27-4 at 138-40. Firefighters arrived roughly 15 minutes later and began spraying the west elevation. Doc. 28-2 at 3-4; Doc. 32-3 at 5. The home suffered substantial damage.

The Lemons had been married for roughly two years at the time of the fire and their relationship was turbulent at times. Doc. 27-5 at 2-3; Doc. 31-2 at 5.[2] For example, law enforcement officers had responded to domestic disturbances at their home. *See* Doc. 27-4 at 75-80. On April 26, 2019 – less than one week before the fire – Candice called the Franklin County Sheriff's Office to advise that Donald had moved out of the residence and she was afraid he would "ransack" the place. Doc. 27-4 at 78. She requested that a deputy be present the next day when he returned to collect some of his personal belongings, stating that she "[couldn't] trust that she won't come home and find her house destroyed." Doc. 27-4 at 78, 94. Candice had once stated that Donald had a drug problem and was having an affair. Doc. 27-10 at 36.

At the time of the fire, the couple was separated and proceeding to a divorce. Doc. 27-5 at 56; Doc. 27-10 at 36. Candice lived at the residence while Donald stayed with a friend, Dakota Clark. Doc. 27-4 at 152. While the Lemons deny their finances

---

[2] The couple reconciled after the fire. Doc. 27-5 at 23.

2

Case 3:20-cv-03018-LTS-KEM   Document 43   Filed 06/28/22   Page 2 of 13

were dire, they admit they were seasonally behind on bills. Doc. 27-5 at 10-12. Candice had inherited more than $100,000 in 2015, but the Lemons had spent all of that money by May 2019. Doc. 27-4 at 214; Doc. 27-5 at 11.

On the day of the fire, Candice states that she left the house sometime after 1:00 p.m. to run errands, which included stopping at Dollar General and Fareway before her work shift began at 4:00 p.m. Doc. 27-5 at 16. However, Candice's bank records do not show any purchases from either store that day, nor has she produced receipts from those errands. Doc. 27-7 at 23-36. While she was at work, Candice received a phone call from the Sheriff advising that her home was on fire. Doc. 27-5 at 18.

Candice has provided inconsistent statements regarding whether Donald was at the house in the hours leading up to the fire. The day after the fire, she told a State Farm representative that Donald had been home roughly one hour before the fire to retrieve some of his fishing equipment. Doc. 27-7 at 38. She later denied saying this. Doc. 27-5 at 19. Donald denies being at the residence in the hours before the fire. Doc. 27-4 at 171. He states he left his workplace with Clark at 4:30 p.m. Doc. 27-4 at 151-52. On their way to Clark's home, they saw smoke. Doc. 27-4 at 171. Clark suggested they investigate further but Donald declined, stating it was probably someone burning garbage. Doc. 27-4 at 171. After arriving at Clark's home, Clark, who is also a volunteer firefighter, heard over the radio that there was a fire at the Lemons' address. Doc. 27-4 at 173. He and Donald then drove to the house. *Id.*

Thomas Craighton of the Hansel Fire Department and Franklin County Emergency Management served as the lead investigator for the responding fire department. Doc. 32-3 at 5. Craighton has been a volunteer firefighter for roughly 15 years. Doc. 27-4 at 113-14. While he is in charge of cause and origin for the Hansel Fire Department, he stated that "by no means am I going to express to anybody in this room that I am an expert at it." Doc. 27-4 at 114. He estimates he has given four or five cause and origin opinions in his time with the Hansel Fire Department. Doc. 27-4 at 116. His most recent cause and origin training, which he describes as a "basic" class, took place roughly five

or six years before the fire. *Id.* Craighton admits he often defers to insurance investigators' cause and origin opinions because "they have more training than [he does] typically." Doc. 27-4 at 116.

Following his investigation of the scene, Craighton stated that he believed the fire started in the northwest corner of the house and that the fire was electrical in nature. Doc. 32-3 at 5. To determine the cause and origin, Craighton:

> Looked around the house, kind of determined the wind because we had wind that day, finally decided where we thought the -- where we thought the fire started and started investigating and looking and went in through a -- so on that house it was the -- the northwest corner of the house, the north -- the west side of that house was a big picture window, and then there was -- it was a two-story home. Most of that destroyed, but the northwest corner of that house is -- we could see that the window had been burned, but we also saw what looked like electrical -- like something burned through the wall going up that area. So we kind of determined that might be where it started and then got inside, dug inside the wall, found that there was an electrical outlet in that area, that there was a wire going up the wall, and there was a -- if I remember right, there was something plugged in there also. I don't know if I put that in here.

Doc. 27-4 at 119. Craighton did no testing beyond the assessment immediately following the fire. Doc. 27-4 at 118-19. At that time, there was discussion among the firefighters about whether someone had intentionally started the fire, but "that was left to the sheriff's office to make that determination . . . . Because we're not . . . investigators." Doc. 27-4 at 120. Both Candice and Donald suggested that Deputy Joseph Einspahr "look into" the other when examining the cause of the fire. See Doc. 27-4 at 79-81.

After the fire, the Lemons submitted a timely claim to State Farm. Doc. 27-4 at 3. Their insurance policy had a dwelling coverage limit of $275,000 and a personal property coverage limit of $206,250. Doc. 31-2 at 5; Doc. 27-4 at 10. The Lemons purchased the home in December 2015 for $40,000. Doc. 28-3 at 14. At the time of the fire, the home had a value of $76,900. Doc. 27-4 at 65. The Lemons submitted a personal property inventory that totaled $173,137.57, although it is not clear that their home could accommodate the number of items claimed. Doc. 27-10 at 34-36

4

State Farm hired Independent Forensic Investigations Corporation (IFIC) to investigate the fire. Doc. 32-3 at 2. Lonn Abeltins, an investigator with IFIC, traveled to the home on May 7, 2019, and June 12, 2019, to conduct his investigation. Doc. 27-4 at 56. As part of his investigation, Abeltins collected four pieces of debris from the rubble and subsequently sent them to the Armstrong Forensic Laboratory to be tested for accelerants. Doc. 27-4 at 61-63. One of the samples tested positive for gasoline. Doc. 28-3 at 30-31. Stacy Niemann, an investigator with IFIC, conducted multiple interviews with the Lemons, McKinney, Craighton, Einspahr, a neighbor and various firefighters who were at the scene. Doc. 37-4 at 66-69.

In his final report to State Farm, dated May 17, 2019, Abeltins wrote:

> This fire originated in the southeast corner area of the house. There is a door at that location with steps going down into the basement. Heavy fire damage and charring, consistent with the use of an ignitable liquid, was noted in the southeast corner of the house. Gasoline was found in the sample from the doorway area at that location. In my opinion, this fire loss was incendiary in nature.

Doc. 27-4 at 64. On March 31, 2020, State Farm denied the Lemons' claim, stating

> After careful consideration of your claim State Farm must respectfully deny your claim. State Farm has reached the determination that no payment is owed under the terms of your insurance policy based on the following: 1) the fire was intentionally set and does not meet the insurance agreement of an accidental, direct physical loss; 2) the fire was intentionally caused or procured by an insured; 3) you violated the Concealment or Fraud condition of the insurance policy by intentionally concealing or misrepresenting material facts and circumstances relating to the claim.

Doc. 27-10 at 37.

State Farm cited, among other things, the "intentional losses" policy exclusion, which states, in relevant part:

> SECTION I – LOSSES NOT INSURED
>
> * * *
>
> 2. **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following

excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or external forces, or occurs as a result of any combination of these:

\* \* \*

h. **Intentional Losses**. If any **insured** intentionally causes or procures a loss to property covered under this policy, we will not pay any **insured** for this loss. This applies regardless of whether the **insured** is charged with or convicted of a crime.

This does not apply to an **insured** who did not participate in, cooperate in, or contribute to causing or procuring the loss.

Doc. 27-4 at 31-33. State Farm also cited the fraud provision, which states:

2. **Concealment or Fraud**. This policy is void as to **you** and any other **insured** if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Doc. 27-4 at 45. In explaining its decision, State Farm stated:

State Farm retained an expert to investigate the origin and cause of the fire. The investigator determined the fire originated in the Southeast corner of the home and the cause of the fire was incendiary. The origin of the fire is supported by an eye witness whom discovered the fire. The findings of the investigator, the eye witness and our investigation disprove the initial belief by the responding Volunteer Fire Departments that the fire may have started in the Northeast corner of the home and was caused by an electrical failure.

State Farm's investigation of the facts and circumstances surrounding the fire revealed both Named Insureds had an opportunity to set the fire and both Named Insureds had motive to set the fire, including but not limited to financial motive. The home was overinsured. It was purchased for $40,000, had an assessed value of $86,900 and was insured for $276,100 with an additional $207,075 of coverage on the contents.

The investigation revealed the Named Insureds misrepresented or concealed material facts and circumstances surrounding the fire including, but not limited to both providing new information during their examination under oath that was more likely than not, fabricated to explain the presence of an

> ignitable liquid being present in the area of origin. Additionally Candice misrepresented and concealed information regarding their financial condition at the time of the fire by representing they had so much money in savings that the bank assigned them a personal banker. However, bank records show little money in the bank accounts at the time of the fire.

Doc. 27-10 at 38-39.

After filing this action, the Lemons retained an expert, David Gossman, to conduct an investigation into the cause and origin of the fire. In a report dated August 2, 2021, Gossman wrote that he found "no evidence that either of the plaintiffs, Donald and Candice Lemon, used gasoline or any other accelerant to start the fire." Doc. 28-4 at 98. Based on the available evidence, Gossman concluded that the fire was "accidental" that it "started on the west or northwest side of the property." *Id.*

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence

7

that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. ANALYSIS

### A. *Count II – Bad Faith*

As noted above, both motions seek judgment as a matter of law with regard to Count II, which asserts a claim of bad faith failure to pay insurance benefits. Under Iowa law,[3] Count II is a first-party bad faith claim, as it involves "an insured's attempt to recover for his or her own losses allegedly covered under the insurance policy." *Johnson v. Farm Bureau Mut. Ins. Co.,* 533 N.W.2d 203, 207 (Iowa 1995). To prevail on such a claim, the plaintiff must show "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *Thorton v. American Interstate Insurance Company*, 897 N.W.2d 445, 461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, "[a] reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville*, 702 N.W.2d at 473. This issue may be decided as a matter of law. *Id*. A claim is "fairly debatable when it is open to dispute on any logical basis . . . . Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Bellville*, 702 N.W.2d at 473. Because the first element's focus is on whether there was a debatable issue, it is not dispositive if the insurer's position was ultimately incorrect. *Id*.

State Farm argues it had a reasonable basis to deny the Lemons' claims based on:

> 1) a determination by Senior Fire Investigator Lonn Abeltins that the fire had started in the southeast corner of the home and was incendiary; 2) the presence of accelerant in the southeast corner of the home at the origin of the fire; 3) reports by the first witness on the scene that the fire originated

---

[3] Neither party contends that the law of any other state applies in this diversity action.

in the southeast corner of the home, burned very hot consistent with having been started with an accelerant, and spread to the northwest area of the home; 4) concessions by Thomas Craighton of his limited experience and training in cause and origin determination, of his cause and origin "analysis" consisting of little more than observations of burn patterns and informal discussions with other volunteer firefighters, of his leaving the determination of whether the fire was incendiary to others, and of his deference to any cause and origin conclusion reached by an investigator with more training and experience than him and/or for which testing had been conducted, *e.g.* Lonn Abeltins' conclusion; 5) that Plaintiffs each had motive and opportunity to start the fire, that in fact each of them blamed the other for starting the fire, and that they knew of no one else who would have reason to burn the house; and 6) that Plaintiffs suffered marital and financial difficulties and submitted an extremely large personal property inventory given their financial circumstances, the size of the house, and their living arrangements.

Doc. 27-1 at 15. The Lemons argue that these six grounds are not sufficient to "tip the balance in favor of Defendant's conduct being remotely fairly debatable." Doc. 31-1 at 9 (citations and quotation marks omitted). The only facts they truly contest are (1) Abeltins' conclusion that the fire was incendiary and (2) gasoline was present in the door threshold in the southeast corner of their house.

The Lemons admit Candice was fearful Donald would "ransack" the home (Doc. 31-2 at 6), that the two were separated (Doc. 31-2 at 16), and that their home was insured over its value (Doc. 31-2 at 5). Further, they admit "[t]he amount of personal property found in the fire debris does not come close to approaching the quantity of personal property the Lemons claim was in the home on the day of the fire, even accounting for the fact that some personal property may have been completely reduced to ash." Doc. 31-2 at 24. Nonetheless, the Lemons argue that setting aside the disputed facts, State Farm did not have sufficient evidence to deny their claim:

> Taking away the IFIC Investigation and AFL lab testing leaves Defendant with, at best, evidence of a single lay person's untrained and unprofessional account the fire started in the southeast corner of the home; the contentions there was marital discord between the Plaintiffs and their associated finger pointing of one another as the cause of the fire; and circumstantial evidence

10

> the Plaintiffs appear to be "padding" or inflating their Claim . . . . At any rate, these contentions even if true are not sufficient to justify denial being "fairly debatable".

Doc. 31-1 at 10.

"[A] defendant can defeat a bad-faith claim by showing that it had only one reasonable basis for denying coverage – not by proving that all of its coverage positions were reasonable." *Liberty Mut. Ins. Co. v. Pella Corp*, 650 F.3d 1161, 1177 (8th Cir. 2011) (citing *Bellville*, 702 N.W.2d at 473 (internal quotation marks omitted)). The question is not whether the reasons cited by the insurer "tip the balance" in their favor. Instead, the burden is on the insured to demonstrate that no single basis for a denial existed. *Bellville*, 702 N.W.2d at 474 ("Courts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim.") (internal quotation marks omitted). Further, State Farm was not required to interpret the facts in the light most favorable to the Lemons when determining whether they have a valid claim. *Bellville*, 702 N.W.2d at 479.

The Lemons premise their claim on their expert's belief that Abeltins failed to consider alternative causes of the fire.[4] However, State Farm relied a wide variety of evidence – including facts the Lemons do not contest – in denying the claim. For instance:

- The first witness at the scene stated the fire began in the southeast corner of the house. Doc. 27-4 at 62.
- Heavy fire damage and charring, consistent with the use of an ignitable liquid, was found in the southeast corner of the house. Doc.

---

[4] The Lemons also place great weight on State Farm's decision not to perform alternative testing on the debris sample that registered gasoline. However, "[t]he lack of proper investigation and evaluation is significant in proving the crucial element of a bad-faith tort, namely knowledge by the insurer of the lack of a debatable reason for denial. Although subjective bad faith may be inferred from an insurer's flawed investigation, an improper investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Reuter v. State Farm Mut. Auto. Ins. Co., Inc.*, 469 N.W.2d 250, 254-55 (Iowa 1991) (internal citations omitted).

11

27-4 at 62.
- The fire damage patterns in the area of the steps were consistent with the use of an ignitable liquid. Doc. 27-4 at 62.
- The Lemons told investigators there were no ignitable liquids in the house. Doc. 27-4 at 63.
- The Lemons have previously reported no electrical or mechanical problems with the house. Doc. 27-4 at 57.
- The Lemons have received no threats and they do not have any enemies, and there were no storms in the area. Doc. 27-4 at 58.

Further, the Lemons were experiencing marital discord and approaching divorce. Their whereabouts leading up to the fire are somewhat unclear and each initially suggested that the other may be responsible for the fire. In addition, the residence was insured well above its worth. In short, when it decided to deny the Lemons' claim, State Farm had before it a great deal of evidence suggesting that the fire was incendiary in nature and that either or both of the Lemons had motive to start an intentional fire.

To counter this evidence, the Lemons argue that State Farm "ignored several undisputed facts," such as Craighton's determination that the fire was electrical in nature and "the improbability of Candice Lemon having set the Fire using an accelerant." Doc. 28-1 at 12. They also cite heavily to Gossman's criticisms of Abeltins' report – such as his alleged failure to undergo hypothesis testing – to demonstrate they are entitled to summary judgment. However, in evaluating a first-party bad faith claim under Iowa law, the issue is not whether the evidence conclusively supports one interpretation of the evidence over the other: "Courts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim." *Bellville*, 702 N.W.2d at 474. State Farm has met its burden of showing, as a matter of law, that reasonable minds could conclude that the Lemons were not entitled to coverage.[5] As such, the Lemons' bad faith claim fails with regard to the first element –

---

[5] Of course, the ultimate question of whether the Lemons are, in fact, entitled to coverage will be decided at trial with regard to Count I, their claim for breach of contract.

whether their insurance claim was "fairly debatable." State Farm is entitled to summary judgment as to Count II of the Lemons' state court petition.

## B.     *Count III – Punitive Damages*

Because States Farm is entitled to summary judgment on Count II, the only substantive claim remining for trial is Count I, the Lemons' claim for breach of contract. Under Iowa law, a mere breach of contract, without an accompanying tort, cannot sustain a claim for punitive damages. *White v. Nw. Bell Tel. Co.*, 514 N.W.2d 70, 78 (Iowa 1994). State Farm is therefore entitled to summary judgment on Count III, which asserts a claim for punitive damages.

## VI.     CONCLUSION

For the reasons set forth herein:

1. Plaintiffs' motion (Doc. 28) for partial summary judgment is **denied**.
2. Defendant's motion (Doc. 27) for partial summary judgment is **granted**. As a result, Counts II and III are hereby **dismissed**.
3. This case will proceed to trial on Count I.

**IT IS SO ORDERED.**

**DATED** this 28th day of June, 2022.

_____
Leonard T. Strand, Chief Judge